United States Court of Appeals
Fifth Circuit

**FILED**

December 11, 2006

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

_____

m 05-60860

_____

FREDERICK M. SEIFERTH,
REPRESENTATIVE OF THE HEIRS AT LAW OF JAMES A. SEIFERTH, DECEASED,

Plaintiff-Appellant,

VERSUS

HELICOPTEROS ATUNEROS, INC., AND MARK CAMOS,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
m 4:03-CV-463

_____

Before SMITH, GARZA, and CLEMENT,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Frederick Seiferth ("Seiferth") appeals the dismissal of his suit against Helicopteros Atuneros, Inc. ("HAI"), and Mark Camus for want of personal jurisdiction. We affirm in part, vacate in part, and remand.

I.

HAI, a California corporation with principal place of business there, buys, sells, leases, and maintains helicopters. It leased a helicopter to non-party Air 2, L.L.C. ("Air 2"), for one year, with Air 2 assuming responsibility for all maintenance, inspections, and operational expenses. There were no geographic restrictions on the helicopter's operation, and Air 2 was not required to inform HAI of the helicopter's

whereabouts. The lease expressly authorized the use of an "externally attached cargo rack to support an aerial lineman" for work on power line structures.

Mark Camus[1] designed and patented an external work platform for use with a helicopter. Although he is a Tennessee domiciliary, all work on the design was conducted in Florida, where he was living at the time. He licensed the design to Air 2, which had hired him as a pilot. Air 2 had the platform manufactured, and it installed the platform on the helicopter leased from HAI. Camus transported the helicopter and work platform to Mississippi for use by Air 2 in that state. In April 2000, before flying a mission for Air 2 in Mississippi, he inspected the work platform.

In February 2001, James Seiferth, an Air 2 employee and New York resident, was standing on the work platform performing an aerial inspection of power lines in Mississippi. The base of the work platform broke, and he fell, suffering injuries resulting in his death.

Seiferth, as the decedent's personal representative, sued HAI and Camus in federal court, invoking diversity jurisdiction. The court, after denying Seiferth's request for limited jurisdictional discovery as to HAI, granted the defendants' motion to dismiss for a lack of personal jurisdiction. Seiferth appeals the dismissal and, in the alternative, the denial of discovery as to HAI.

## II.

We review *de novo* a district court's determination that it lacks personal jurisdiction.

[1] Camus's name was misspelled "Camos" in the initial filings and the district court's opinion. We use the proper spelling in the body of this opinion.

*Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000). The plaintiff bears the burden of establishing jurisdiction but is required to present only *prima facie* evidence. *Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir.), *cert. denied*, 126 S. Ct. 2968 (2006). We resolve all relevant factual disputes in the plaintiff's favor. *Id.*

District courts have "broad discretion in all discovery matters." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 220 (5th Cir. 2000) (quoting *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982)). On matters regarding personal jurisdiction, discovery rulings are reviewed for abuse of discretion and "will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Id.* (quoting *Wyatt*, 686 F.2d at 283).

A federal court sitting in diversity must satisfy two requirements to exercise personal jurisdiction over a nonresident defendant. First, the forum state's long-arm statute must confer personal jurisdiction. Second, the exercise of jurisdiction must not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999).

Mississippi's long-arm statute confers personal jurisdiction over "[a]ny nonresident person . . . who shall commit a tort in whole or in part in this state against a resident or nonresident of this state . . . ." MISS. CODE ANN. § 13-3-57 (2002). Under Mississippi law, a tort is not complete until an injury is suffered. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1168 (5th Cir. 1985) (quoting *Smith v. Temco, Inc.*, 252 So. 2d 212, 216 (Miss. 1971)). If the injury occurs in Mississippi, the tort is committed, at least in part, in the state, and the requirements of the long-arm statute

are satisfied. *Id.* The tortfeasor's presence in Mississippi is not required; causing an injury that occurs in the state is sufficient. *Id.* (quoting *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 333 (5th Cir. 1982)).

The Due Process Clause "operates to limit the power of a State to assert *in personam* jurisdiction over a nonresident defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984). The "constitutional touchstone" of the inquiry to determine if personal jurisdiction can be exercised is whether the defendant "purposefully established minimum contacts in the forum State." *Asahi Metal Ind. Co. v. Super. Ct.*, 480 U.S. 102, 108-09 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Personal jurisdiction can be general or specific. If a defendant's contacts with the forum state are "continuous and systematic," a court may exercise general jurisdiction over any action brought against that defendant, regardless of whether the action is related to the forum contacts. *Helicopteros*, 466 U.S. at 414-15. If a defendant has relatively few contacts, a court may still exercise specific jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Id.* at 414 & n.8. It is not disputed that HAI and Camus lack sufficient contacts to justify general jurisdiction; only specific jurisdiction is at issue.

We articulated a three-step analysis for the specific jurisdiction inquiry in *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374 (5th Cir. 2002):

(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Id.* at 378 (citing *Burger King*, 471 U.S. at 474). If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable. *Id.* at 382.

III.

The Mississippi long-arm statute permits the exercise of personal jurisdiction over both defendants. It is not disputed that the injury, James Seiferth's death, occurred in Mississippi. He fell from a platform that had been transported to the state by Camus and inspected by him there, and the platform was attached to HAI's helicopter, which had been leased with an express provision permitting the use of a work platform. Thus, under Mississippi law, at least part of the tort allegedly perpetrated by HAI and Camus was committed in Mississippi. That fact authorizes the exercise of personal jurisdiction under the long-arm statute.

Although Camus admitted to the district court that the "general allegations of the plaintiff's complaint satisfy the long arm statute," he now claims that, because all of his Mississippi contacts were in the context of his Air 2 employment, the court cannot exercise personal jurisdiction. This argument misstates the law.

Camus relies on *Cole v. Alton*, 567 F. Supp. 1081 (N.D. Miss. 1983), an opinion not binding on this court, as authority for his

claim. This reliance is misplaced. *Cole* involved an automobile accident in which the defendants were Atlas, the company that leased and operated the truck involved in the accident; the Atlas employee who was driving the truck; the owner of the truck; and several executives and shareholders of Atlas. Neither Atlas nor the driver, who had acted in the scope of his employment, contested jurisdiction, which was challenged only by the remaining defendants, none of whom had a single direct contact with Mississippi. The court held that jurisdiction "over the corporate entity cannot, without more, confer jurisdiction over the officers and shareholders individually." *Id.* at 1083 (citing *Webb v. Culberson, Heller & Norton, Inc.*, 357 F. Supp. 923, 925 (N.D. Miss. 1973)).

Unlike the *Cole* defendants, Camus had direct contacts with Mississippi. He transported the helicopter and work platform to the state and inspected the platform there less than a year before the accident. Under Mississippi law, when a corporate officer "directly participates in or authorizes the commission of a tort, even on the behalf of the corporation, he may be held personally liable." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 173 (5th Cir. 1985) (citing *First Mobile Home Corp. v. Little*, 298 So. 2d 676, 679 (Miss. 1974)).

In short, Camus is alleged to have directly participated in the commission of a tort in Mississippi. It is immaterial whether he did so within the scope of his Air 2 employment. The district court correctly held that Seiferth's "allegations fall within the aegis of the [long-arm] statute."

IV.

Thus, Mississippi's long-arm statute reaches both defendants. We now consider whether the exercise of personal jurisdiction offends the Due Process Clause.

A.

The exercise of personal jurisdiction over HAI is inconsistent with the limitations of the Due Process Clause, because HAI did not establish minimum contacts with Mississippi. The stream-of-commerce theory does not confer jurisdiction because, even if the theory extended to leased products, HAI did not expect, nor should it have expected, that the helicopter would be used in Mississippi. We affirm the dismissal for lack of personal jurisdiction as to HAI.

1.

The first step of the *Nuovo Pignone* analysis asks whether a defendant has minimum contacts with the forum state. HAI's ownership of the helicopter, which was leased and operated by Air 2, is considered under the stream-of-commerce theory in the following section. The district court found that HAI did not have any other contacts with Mississippi. We agree.

HAI did not have a physical presence in Mississippi. It did not conduct business in the state. Its contract with Air 2 was not signed in Mississippi, nor did the contract call for performance in that state. Despite this dearth of contacts, Seiferth relies on two cases to argue that the exercise of personal jurisdiction over HAI is consistent with the Due Process Clause: *Elkhart Eng'g Corp. v. Dornier Werke*, 343 F.2d 861 (5th Cir. 1965), and *Brown v. Astron Enters., Inc.*, 989 F. Supp. 1399 (N.D. Ala. 1997). This argument is unavailing.

After selling an airplane to Elkhart, Dornier requested permission to use the plane in dem-

4

onstrations to potential buyers throughout the United States. Elkhart agreed, and a Dornier pilot flew the plane to Alabama for the sole purpose of showing it to potential clients; a Dornier sales manager and mechanic were also present. The plane crashed during the demonstration, and Elkhart sued in federal court in Alabama. *Elkhart*, 343 F.2d at 863. This court held that the district court could properly exercise personal jurisdiction over Dornier. *Id.* at 868.

*Elkhart* is plainly distinguishable from the present case. Dornier transported the plane to the forum for a sales demonstration. At the time of the crash, Dornier possessed the plane; a Dornier mechanic was inspecting and maintaining it, and its pilot was flying it. HAI, conversely, did not transport the helicopter to Mississippi; indeed, it did not even know the helicopter had been transported there. HAI did not possess the helicopter at the time of the crash; it was neither maintaining nor operating it. The rationale for the exercise of personal jurisdiction in *Elkhart*, that the defendant brought the aircraft to the forum and was operating it at the time of the accident, does not provide a basis for the exercise of personal jurisdiction over HAI, which never entered Mississippi.

*Brown*, a district court opinion not binding on this court, similarly does not support the exercise of personal jurisdiction over HAI. The defendant, North American Flight Training Academy ("NAFTA"), rented one of its airplanes for a training flight from Georgia to Alabama. *Brown*, 989 F. Supp. at 1401-02. The student pilot declared his intention to travel to Alabama in a pre-filed flight plan, and during the flight the plane crashed in Alabama. *Id.* at 1405. After plaintiff sued in federal court in Alabama, NAFTA moved to dismiss for lack of personal jurisdiction.

The court found that the exercise of jurisdiction was proper because NAFTA's rental was an act "directed at Alabama because the pilot stated his intention to come to Alabama in a pre-filed flight plan." *Id.* This distinguishes NAFTA's situation from HAI's; unlike the student pilot, Air 2 did not state an intention to operate the helicopter in Mississippi.

Dornier in *Elkhart*, and the student pilot in *Brown*, declared their intentions to use the aircraft in the forum. Air 2 did not, and HAI had no reason to expect that its helicopter would be used in Mississippi. Thus, contrary to Seiferth's assertion, these cases do not support the exercise of personal jurisdiction over HAI.

2.

Seiferth alleges that, by placing the helicopter into the stream of commerce, HAI purposefully directed its activities at Mississippi and thus subjected itself to the jurisdiction of Mississippi courts. We disagree.

The stream-of-commerce theory permits the exercise of personal jurisdiction over a nonresident defendant that "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980). The foreseeability required in the products liability context is "not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297. Once a product has reached the end of the stream and is purchased, a consumer's unilateral decision to take a product to a distant

5

state, without more, is insufficient to confer personal jurisdiction over the manufacturer or distributor. *Id.* at 298.

We have not extended this theory to leased products, and we need not and do not decide whether to make such an extension.[2] The exercise of personal jurisdiction would not be proper even if the stream-of-commerce theory applied to leased products, because HAI did not expect the lessee to take the helicopter to Mississippi.[3] *See supra* Part IV.A.1. The lease imposed no geographical limitations, and

---

[2] The other circuit to consider this question likewise refused to extend the stream-of-commerce theory to leased products. *See Bell Helicopter Textron v. HeliQwest Int'l., Ltd.*, 385 F.3d 1291 (10th Cir. 2004). The facts are remarkably similar to those before us: A company leased a helicopter in Canada and took it to Utah, where it crashed. The lessor was sued in Utah, and the Tenth Circuit held that the exercise of personal jurisdiction offended the Due Process Clause because the lessor had no reason to expect the lessee to take the helicopter to Utah. The court found that even if the lessee had operated a physical facility in Utah when the lease was signed, that would be insufficient to establish personal jurisdiction over the lessor. *Id.* at 1297.

[3] *See, e.g. Luv n' care*, 438 F.3d at 470-71 (finding jurisdiction over defendant that expected its products to be purchased in the forum state, as evinced by its filling sixty-five purchase orders for items bound for the forum and sending invoices to the retailer confirming the same); *Nuovo Pignone*, 310 F.3d at 379-80 (finding jurisdiction over defendant that shipped a reactor to the forum state on a defective vessel); *Bean Dredging Corp. v. Dredge Tech. Corp.*, 744 F.2d 1081, 1085 (5th Cir. 1984) (finding jurisdiction over defendant that sold castings to distributor with the expectation that distributor would retail the castings to a nationwide market).

Seiferth does not show any reason for HAI to have expected Air 2 to use the helicopter in Mississippi.[4] The transportation of the helicopter to Mississippi was a unilateral act of Air 2, which under *World Wide Volkswagen* is insufficient to confer personal jurisdiction over HAI.

### B.

Seiferth brings four claims against Camus: defective design, failure to warn, negligence, and negligence *per se*. The first claim arises out of Camus's design of the work platform from which Seiferth fell, and the remaining three from Camus's contacts with Mississippi.

We initially consider what appears to be an issue of first impression for our court: Is specific personal jurisdiction a claim-specific inquiry? We conclude that it is. A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim.

This result flows logically from the distinction between general and specific jurisdiction and is confirmed by the decisions of our sister circuits.[5] If a defendant does not have enough

---

[4] Seiferth's allegation that HAI should have known that Air 2 generally operated in the southeast region of the United States is insufficient to establish that HAI expected the helicopter to be used in Mississippi. *See Bell Helicopter*, 385 F.3d at 1298 (holding that although the lessor could potentially have foreseen that the helicopter would be used in western states with national forests, "[a] general hope that a party will use a product in a general region is too remote an aspiration to qualify as purposeful availment in a specific state").

[5] *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999) (continued...)

6

contacts to justify the exercise of general jurisdiction, the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts.

Permitting the legitimate exercise of specific jurisdiction over one claim to justify the exercise of specific jurisdiction over a different claim that does not arise out of or relate to the defendant's forum contacts would violate the Due Process Clause. Thus, if a plaintiff's claims relate to different forum contacts of the defendant, specific jurisdiction must be established for each claim.[6] We therefore consider separately Seiferth's defective design claim, which does not arise out of the same forum contacts as do his other three claims.

### 1.

The Due Process Clause precludes the exercise of personal jurisdiction over Camus for Seiferth's claim based on Camus's alleged defective design of the work platform. By transporting the helicopter and work platform to Mississippi and inspecting the platform there, Camus directed his activity toward the state and purposefully availed himself of its laws, which satisfies the first prong of the *Nuovo Pignone* analysis.[7] The inquiry fails, however, at the second step, because the defective design claim does not arise out of or result from Camus's Mississippi contacts.

None of Camus's Mississippi contacts relates to his design of the platform. Camus designed the rack in Florida, not Mississippi; he did not manufacture it in Mississippi. Indeed, he did not manufacture it at all⎯Air 2 had it manufactured. The stream-of-commerce theory does not provide a basis for jurisdiction, because Camus did not place a product into the stream, but merely licensed a design to Air 2. The dismissal of Seiferth's defective design

---

[5](...continued)
("Questions of specific jurisdiction are always tied to the particular claims asserted."); *Remick v. Manfredy*, 238 F.3d 248, 255-56 (3d Cir. 2001) (holding that the personal jurisdiction inquiry "is claim specific because a conclusion that the District Court has personal jurisdiction over one of the defendants as to a particular claim asserted by Remick does not necessarily mean that it has personal jurisdiction over that same defendant as to Remick's other claims"); *Zumbro, Inc. v. Cal. Natural Prods.*, 861 F. Supp. 773, 779 (D. Minn. 1994) ("Because specific jurisdiction requires a nexus between the defendant's contacts with the forum state and the subject matter of Zumbro's claims in this litigation, it is necessary to address each of Zumbro's claims individually." (citing *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1281-82 (8th Cir.1991))); *Resnick v. Rowe*, 283 F. Supp. 2d 1128, 1132 (D. Haw. 2003) ("[A] plaintiff must establish personal jurisdiction over a defendant with respect to each claim." (citing *Data Disc, Inc. v. Sys. Tech. Assocs. Inc.*, 557 F.2d 1280, 1289 n.8 (9th Cir. 1977))).

[6] *See* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 1351, at 299 n.30 (2004) ("There is no (continued...)

[6](...continued)
such thing as supplemental specific personal jurisdiction; if separate claims are pled, specific personal jurisdiction must independently exist for each claim and the existence of personal jurisdiction for one claim will not provide the basis for another claim.").

[7] That prong asks "whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there." *Nuovo Pignone*, 310 F.3d at 378.

claim for lack of personal jurisdiction was proper.

2.

Camus's Mississippi contacts are relevant to Seiferth's claims of failure to warn, negligence, and negligence *per se*. As discussed above, these contacts demonstrate activities directed toward Mississippi and a purposeful availment of its laws. Camus again claims that these contacts cannot be considered in our due process analysis because they were made in his capacity as an Air 2 employee and thus cannot expose him to personal jurisdiction. We have rejected this argument with respect to Mississippi's long-arm statute in Part III, *supra*, and we do the same here.

The Supreme Court addressed this issue in *Calder v. Jones*, 465 U.S. 783 (1984). The defendants were employees of a newspaper and challenged jurisdiction by asserting, *inter alia*, that their only contacts with the forum state were in the context of their employment. The Court held that the defendants' "status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually." *Id.* at 790. The Court found that jurisdiction was proper because the defendants were "primary participants in an alleged wrongdoing intentionally directed at a California resident." *Id.*

Accordingly, we do not exclude Camus's Mississippi contacts from the jurisdictional analysis, because they were in the context of his Air 2 employment. He directed his activities at Mississippi, which satisfies step one of the *Nuovo Pignone* analysis.

Step two asks whether the cause of action "arises out of or results from [Camus's] for-um-related contacts." *Nuovo Pignone*, 310 F.3d at 378. Camus transported the work platform to Mississippi and inspected it there. Viewing all facts favorably toward jurisdiction, as we must, this is sufficient to find that the claims of failure to warn, negligence, and negligence *per se* arise out of Camus's Mississippi contacts.

The district court found that "Camos' April 2000 inspection of the work platform is too far removed in time to have played any role in Seiferth's death nearly a year later." Though this statement may be true, it does not bear on the jurisdictional question, but rather goes to the merits of Seiferth's claims. A defendant with the required minimum contacts "cannot avoid personal jurisdiction by speculating as to whether another party was actually responsible for the accident." *Id.* at 380. Thus, because Seiferth's claims of failure to warn, negligence, and negligence *per se* arise out of Camus's forum contacts, the second step of the *Nuovo Pignone* analysis is satisfied.

The third and final step asks "whether the exercise of personal jurisdiction is fair and reasonable." *Id.* at 378. The burden of proof shifts to the defendant to show that the exercise of personal jurisdiction is unfair or unreasonable based on five factors: "(1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies." *Id.* at 382 (citing *Felch v. Transportes Lar-Mex SA de CV*, 92 F.3d 320, 324 (5th Cir. 1996)). Because the district court determined that Camus did not have sufficient contacts with Mississippi to permit the exercise of personal jurisdiction, it did not

8

reach the third step.

We conclude that Camus directed his activities at Mississippi and purposefully availed himself of the privileges of conducting activities there and that Seiferth's claims of failure to warn, negligence, and negligence *per se* arise out of Camus's Mississippi contacts. We thus vacate the dismissal of these claims and remand to the district court to determine whether the exercise of personal jurisdiction over Camus by a Mississippi court is fair and reasonable.

## V.

Seiferth appeals the denial of limited jurisdictional discovery as to HAI. The standard of review poses a high bar; a district court's discretion in discovery matters "will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Alpine View*, 205 F.3d at 220. Seiferth had access to the lease of the helicopter and the affidavit of HAI's president and failed to make even a *prima facie* showing of jurisdiction. Seiferth alleges that further discovery may disclose additional contacts HAI had with Mississippi such as advertisements, phone calls, or e-mail inquiries. Such contacts, however, would support the exercise of general, not specific, jurisdiction, something Seiferth has not alleged in this case. The district court did not abuse its discretion.[8]

## VI.

---

[8] *See Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) ("Because they failed to argue that the district court would have general jurisdiction over [defendant], appellants cannot show that they were prejudiced by the district court's refusal to allow them to pursue the discovery.").

In summary, because HAI did not have sufficient contacts with Mississippi, we AFFIRM the dismissal, for want of personal jurisdiction, of all claims against HAI. Because Seiferth's claim against Camus for defective design did not arise out of or relate to a forum contact, we AFFIRM the dismissal of that claim for want of personal jurisdiction. Because the remaining claims against Camus arise out of his Mississippi contacts, we VACATE the dismissal of those claims and REMAND for the district court to determine whether the exercise of personal jurisdiction is fair and reasonable. Finally, we AFFIRM the denial of jurisdictional discovery as to HAI.