# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 15, 2010

No. 09-31135
Summary Calendar

Lyle W. Cayce
Clerk

WILLOW BEND, L.L.C.,

Plaintiff – Appellant

v.

DOWNTOWN ABQ PARTNERS, L.L.C.; VINCENT J. GARCIA,

Defendants – Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before HIGGINBOTHAM, DENNIS, and SOUTHWICK, Circuit Judges.

PATRICK E. HIGGINBOTHAM:

Our plaintiff wants a federal court in Louisiana to assert specific personal jurisdiction over a New Mexico resident and a New Mexico partnership so that it may bring claims of breach of contract and breach of a fiduciary duty. As neither defendant remaining in this appeal was an actual party to that contract or otherwise assumed a fiduciary duty to the plaintiff, we affirm the district court's dismissal for want of jurisdiction.

I

Willow Bend, a Colorado limited liability company whose members reside in both Colorado and Louisiana, held an option to purchase a parcel of land in St. John the Baptist Parish, in the Eastern District of Louisiana. In the fall of

2006, it began negotiating with a New Mexico resident, Vincent J. Garcia, for a joint venture arrangement to assist in the property's financing. Garcia, the president of Blue Dot—a New Mexico corporation—and managing partner of Downtown ABQ Partners—a New Mexico partnership—indicated that one of the two entities would assist in purchasing the property.

A month's worth of negotiations later, Willow Bend and Blue Dot—but not Downtown ABQ or Garcia in his personal capacity—entered into a financing agreement. By the contract's terms, Blue Dot was to either profit from the subsequent resale of the property to a third-party purchaser or, failing a sale, become a 65 percent owner in the property. Garcia, acting on Blue Dot's behalf, twice visited the state to inspect the property. He and his representatives spoke with Louisianan attorneys, brokers, and real estate agents concerning the property, Blue Dot's intent to finance the purchase of it, and financial and zoning details related to the planned purchase. The contract Blue Dot signed chose Louisiana law.

As it happened, the would-be third-party purchaser pulled out, and Blue Dot was unable to fund the purchase price to obtain its 65 percent ownership stake. Willow Bend sued Garcia, Blue Dot, and Downtown ABQ for breach of contract and breach of fiduciary duty in the Eastern District of Louisiana. The district court found personal jurisdiction lacking as to Garcia and Downtown ABQ and dismissed them from the lawsuit. Satisfying itself of its jurisdiction over Blue Dot, the court then entered a judgment for money damages in the amount of $2,425,000 against the New Mexico corporation and in Willow Bend's favor. Unhappy with this result, Willow Bend timely appealed the district court's dismissal of Garcia and Downtown ABQ for want of jurisdiction.

II

A federal district court in Louisiana sitting in diversity may exercise personal jurisdiction over a non-resident defendant if (1) the defendant has purposefully availed himself of the protections and benefits of Louisiana by

establishing "minimum contacts" in the state, and (2) the exercise of the jurisdiction complies with traditional notions of "fair play and substantial justice."[1]   Though minimum contacts may give rise to either "general" or "specific" jurisdiction, Willow Bend pushes only the latter, which exists when the "plaintiff's cause of action"—in the present case, footed on theories of breach of contract and fiduciary duty—"arises out of or results from the defendant's forum-related contacts."[2]

Faithful to the adage that "[e]ach defendant's contacts with the forum State must be assessed individually,"[3] the district court examined the defendants one at a time.  Blue Dot, the court concluded, was obliged to defend Willow Bend's lawsuit because, as we have mentioned, it had contracted to finance the purchase of a plot of land in the state; Garcia—acting as the corporation's president—twice visited Louisiana; and Garcia and other Blue Dot representatives repeatedly contacted Louisianans about the property.  And, again, the contract—on which Willow Bend's claims are based—chose Louisiana law.  Downtown ABQ, conversely, was not a party to that contract: it is a legal entity separate and apart from Blue Dot, and had only one contact with the state in its name—the ordering of an appraisal for the property from a Louisiana firm.

---

[1] *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985) (quotation marks omitted).  The Louisiana long-arm statute must confer personal jurisdiction over the defendant and the exercise of personal jurisdiction must comport with due process under the United States Constitution. *See Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).  Because the Louisiana long-arm statute extends to the limits of due process, we collapse the two-step inquiry into a single question: Would the exercise of personal jurisdiction over the defendants be permissible under the Due Process Clause of the Fourteenth Amendment? *See* LA. REV. STAT. ANN. § 13:3201(B) (2010); *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242–43 (5th Cir. 2008).  Resolving all disputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction, we review the district court's dismissal for lack of personal jurisdiction de novo. *See McFadin v. Gerber*, 587 F.3d 753, 758 (5th Cir. 2009).  Willow Bend must make only a prima facie showing of the predicate facts. *See id.*

[2] *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).

[3] *Calder v. Jones*, 465 U.S. 783, 790 (1984).

3

A far cry from "minimum contacts," to be sure. As for Garcia, the district court observed that he too was a non-party to the financing agreement, finding "no evidence" that it would be reasonable to pierce the corporate veil and hold Garcia individually liable or to conclude that Garcia acted in his individual capacity during contract negotiations.

For reasons unexplained, Willow Bend acquiesces to the district court's first conclusion—that no cause exists to veil pierce and hold Garcia accountable under Willow Bend's contract with Blue Dot—complaining only that it has "submitted affidavits establishing that Garcia acted on his own behalf as well as on behalf of his two corporate entities when he conducted activities in the forum state." This, Willow Bend says, demonstrates that Garcia was "transacting business" in Louisiana and is now amenable to suit there. But because these activities fell short of consummating a contractual relationship in Garcia's personal capacity or on Downtown ABQ's behalf, Willow Bend is left arguing that "[t]he only distinction between Blue Dot and the other defendants is that Blue Dot was party to a written agreement to buy Louisiana property."

Yet that written agreement is no throwaway: in fact, it is the critical forum contact in this case, and the linchpin of the district court's exercise of jurisdiction over Blue Dot. Willow Bend's winning breach of contract and breach of fiduciary duty claims against Blue Dot arose out of and resulted from Blue Dot's primary contact with the state of Louisiana—its contract with Willow Bend. Without a contract tying the non-signatories Garcia and Downtown ABQ to Willow Bend's claims against them, however, those claims share an inadequate nexus to the forum: they did not "arise out of or result from" the defendants' contacts with the state of Louisiana. In fact, those claims failed to arise altogether. Willow Bend sued for breach of *contract* and breach of *fiduciary duty*, after all, and a defendant cannot be said to have breached a contract it never made or to have skirted a duty it never assumed. Unlike Blue Dot, neither Garcia nor Downtown ABQ can be sued for breach of contract in this action because they were simply

not parties to any contract with Willow Bend, while, for the same reason, Garcia owed no individual fiduciary duty to Willow Bend and so could not have breached that either.[4]  Willow Bend contracted with Blue Dot—and Blue Dot alone—and it is with Blue Dot that its claims for breach of contract and breach of fiduciary duty must lie.

As this case demonstrates, specific jurisdiction is bound up with the claim asserted—it is claim-specific.[5]  Had Willow Bend put forth claims independent of a contractual relationship—common law fraud, for instance—nothing said today would have necessarily precluded a finding of personal jurisdiction over

---

[4] Willow Bend baldly asserts that "Garcia negotiated and promised to provide funds to permit the purchase of the Louisiana property in exchange for undivided interests in it," but it was Blue Dot—not Garcia or Downtown ABQ—that entered a written agreement with Willow Bend.  And it is this contract, in which Blue Dot agreed to assist in financing the purchase of Louisiana real property and to litigate any resultant disputes under Louisiana law, that forms the basis of Willow Bend's claims.  Willow Bend also claims that, "[a]t Garcia's request, Willow Bend's attorneys drafted documents to form Willow Bend NM Developments, LLC, with Willow Bend and [Downtown] ABQ as the sole members of the new limited liability company, which would become the owner of the property."  But this agreement was never executed, and by all accounts it would have formed under the laws of New Mexico.  For his part, Garcia did not so much as guarantee Blue Dot's contractual performance under the financing agreement between Blue Dot and Willow Bend.  *See Forsythe v. Overmyer*, 576 F.2d 779, 784 (9th Cir. 1978) (finding personal jurisdiction over the chairman and sole stockholder of the defendant corporation because the chairman had personally guaranteed the corporation's contract with the plaintiff).   In Louisiana, a cause of action for breach of fiduciary duty is subject to the ten-year prescriptive period typically associated with the enforcement of contractual rights.  *See Barksdale v. Lincoln Builders, Inc.*, 32,857 (La. App. 2 Cir. 6/21/00); 764 So.2d 223, 232, *writ denied*, 00-2646 (La. 2/9/01); 785 So. 2d 821.

[5] *Seiferth*, 472 F.3d at 274–75.

Garcia.[6] But Willow Bend did not so the district court's order dismissing Garcia and Downtown ABQ from this action is AFFIRMED.

---

[6] *See Calder*, 465 U.S. at 789–90 (holding that a reporter's allegedly libelous article, written about a forum resident and distributed by the reporter's employer in the forum state, was an intentional act directed at the forum state that justified jurisdiction there); *Seiferth*, 472 F.3d at 272 (5th Cir. 2006) (stating, in a wrongful death suit, that it was "immaterial" whether the defendant acted within the scope of his employment because he directly committed the allegedly tortious action in the forum state); *Lewis v. Fresne*, 252 F.3d 352, 359 n.6 (5th Cir. 2001) (recognizing specific jurisdiction over the president of the defendant corporation as to the plaintiff's fraud claim because the president "deliberately misled" the plaintiff in order to get the money needed to keep the corporation "afloat"); *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 794–95 (5th Cir. Oct. 5, 2007) (unpublished) (finding specific personal jurisdiction over non-resident corporate officer who sent allegedly fraudulent marketing materials to plaintiff in forum state); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ("In *Calder v. Jones*, we today reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity. But jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him.") (internal citation omitted).