**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 16, 2013

Lyle W. Cayce
Clerk

No. 12-50765

ERNEST BUSTOS; PAY PHONE OWNERS LEGAL FUND, L.L.C.,

Plaintiffs–Appellants,

versus

THOMAS F. LENNON; PAUL B. GEORGE; CARTER M. MAN;
FOSTER PEPPER TOOZE, L.L.P.; DAVID L. OSIAS; DAVID R. ZARO;
ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS, L.L.P.;
CHRISTOPHER R. BARCLAY; STACY ELLEDGE CHIANG;
MBI LIQUIDATION, INCORPORATED,
Formerly Known as Mack/Barclay, Incorporated; LECG, L.L.C.,

Defendants–Appellees.

Appeals from the United States District Court
for the Western District of Texas
USDC No. 5:11-CV-837

No. 12-50765

Before SMITH, PRADO, and OWEN, Circuit Judges.

PER CURIAM:[*]

Ernest Bustos and the Pay Phone Owners Legal Fund, L.L.C. ("PPOLF"), appeal a dismissal for lack of personal jurisdiction and a denial for leave to amend the complaint. We affirm.

### A.

This case arises from Alpha Telcom's ongoing receivership in the United States District Court for the District of Oregon.[1] The Oregon district court and the Ninth Circuit have spent over a decade sorting out the pieces of this saga, including reviewing the receiver's compensation advances, determining final fees and expenses, and distributing assets.

Bustos is no stranger to this litigation. *See In re Alpha Telcom, Inc.*, No. 03:01-CV-1283, 2013 WL 840065, at *18 (D. Or. Mar. 6, 2013). He started out selling investments in Alpha Telcom; when the company went into receivership, he formed PPOLF to solicit money from the investors, purportedly to help recover their lost funds.[2]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] *See SEC v. Ross*, 504 F.3d 1130 (9th Cir. 2007) (discussing the Alpha Telcom litigation); *see also SEC v. Rubera*, Nos. 12-35108, 12-35415, 2013 WL 3929231 (9th Cir. July 31, 2013) (mem.); *SEC v. Rubera*, 412 F. App'x 980 (9th Cir. 2011) (mem.); *SEC v. Rubera*, 350 F.3d 1084 (9th Cir. 2003).

[2] Bustos appears to be working at cross-purposes. He successfully appealed an order disgorging his sales commissions. *Ross*, 504 F.3d 1130. By ensuring that the sales agents could keep their commissions, even less was left for the defrauded investors to recover.

No. 12-50765

In about October 2011, Bustos filed this lawsuit [3] against Thomas Lennon (the court-appointed receiver) and the various professionals who had provided services in connection with the receivership, for conversion, breach of fiduciary duty, and negligence.[4]  Specifically, Bustos sought damages for the acts and omissions in connection with Lennon's advancement of funds to himself and the determination that Lennon was incapacitated while acting as receiver.

The district court, accepting the recommendations of the magistrate judge ("MJ"), dismissed for lack of personal jurisdiction.[5]  The MJ also denied Bustos's motion to amend his complaint.  Bustos and PPOLF appeal.

B.

"We review *de novo* a district court's determination that it lacks personal jurisdiction." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006).  Bustos bears the burden of making a *prima facie* showing of jurisdiction. *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 368 (5th Cir. 2010).

Personal jurisdiction over nonresident defendants in federal diversity cases is limited by the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009).  The Texas long-arm statute extends to the constitutional limits, *id.*; thus, we consider whether the defendant has sufficient mini-

---

[3] The Oregon district court held—and the Ninth Circuit affirmed—that Bustos had violated a preliminary injunction by filing the Texas complaint without leave and that the Texas action directly interferes with the receivership proceedings. *Rubera*, Nos. 12-35108, 12-35415, 2013 WL 3929231.

[4] The SEC was named as a defendant but is not a party to this appeal.

[5] The district court also denied as moot a motion by some of the appellees to transfer the case.

3

mum contacts with Texas so as to "not offend traditional notions of fair play and substantial justice." *Intl. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations and citations omitted); *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). "The 'constitutional touchstone' of the inquiry to determine if personal jurisdiction can be exercised is whether the defendant 'purposefully established minimum contacts in the forum State.'" *Seiferth*, 472 F.3d at 271 (quoting *Asahi Metal Ind. Co. v. Super. Ct.*, 480 U.S. 102, 108–09 (1987)).

Bustos acknowledges that Lennon and the defendants do not have the "continuous and systematic" contacts with Texas that would confer general personal jurisdiction. *See id.* Instead, Bustos alleges that there is specific jurisdiction based on "minimum contacts with Texas arising from or directly related to [his] claims." This court follows a three-step analysis to determine whether contacts are sufficient for specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Seiferth*, 472 F.3d at 271. Determining whether the contacts are sufficient is fact-intensive and should reflect "whether the defendant's conduct shows that [he] reasonably anticipate[d] being haled into court." *McFadin*, 587 F.3d at 759 (internal quotations and citations omitted).

Bustos, a Texas resident, admits that none of the defendants lives or works in Texas and that the relevant conduct occurred outside the state. In addition, the receivership was governed by Oregon law, all the professional services occurred in Oregon, and the attorneys and accountants were bound by the

standards of Oregon or California. Despite this, Bustos's complaint maintains that the defendants purposely directed their activities at Texas. He seeks to prove this through the effects doctrine, alleging that "it was reasonably foreseeable that investors in Alpha Telcom generally would be harmed and it was reasonably foreseeable that some of such investors would be in Texas."

"[A]n act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *McFadin*, 587 F.3d at 760 (quoting *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999)). This type of jurisdiction is rare however, and the effects of an alleged intentional tort are merely part of the analysis of minimum contacts. *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 486 (5th Cir. 2008). Merely causing harm to a resident of a state is not sufficient, *id.*, nor is the "fortuity of one party residing in the forum state." *McFadin*, 587 F.3d at 760. Similarly, foreseeable injury in the state is not enough "absent the direction of specific acts toward the forum." *Id.* at 762.

In *Calder v. Jones*, 465 U.S. 783, 788–89 (1984), the Court held the effects test to be sufficient for California jurisdiction where the defendants had authored a libelous story, based on California sources, about a California resident, that resulted in harm within California. "In sum, California is the focal point both of the story and of the harm suffered," *id.* at 789, and the defendants could reasonably expect to be haled into court in California, *id.* at 790.

Bustos does not offer non-conclusional factual allegations that, as in *Calder*, the defendants "intentionally aimed their . . . harmful conduct at the [Texas] resident[s]." *Guidry*, 188 F.3d at 629; *see Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 n.16 (5th Cir. 1996) (crediting "the non-

conclusional factual allegations of the complaint"). The defendants had no direct contacts with Texas, and Bustos cannot point to any "intentional . . . actions [that] were expressly aimed at [Texas]," *Calder*, 465 U.S. at 789, other than the alleged foreseeabilty that any negligent actions would affect some investors in Texas. Bustos failed to establish a *prima facie* case that the defendants purposely directed their activities at Texas to have sufficient minimum contacts.

The assertion of personal jurisdiction in Texas is unreasonable in this case and fails to comport with the standards of "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). The defendants may prove jurisdiction is unfair based on these factors: "(1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies." *Seiferth*, 472 F.3d at 276 (internal quotation and citation omitted). We acknowledge that it is rare to refuse jurisdiction on these grounds, *McFadin*, 587 F.3d at 759, but the facts here are overwhelming. We echo the MJ's conclusion that "it appears that, dissatisfied with the direction and/or speed at which the Oregon wheels of justice were turning, plaintiffs filed suit in this Court in an effort to redirect their claims towards a more favorable outcome and possibly accelerate resolution of these claims."

The burden on all of the defendants, who live and work outside of Texas and are currently litigating the receivership in Oregon, would be heavy. Similarly, we cannot assign great weight to Bustos's interest in seeking relief in two jurisdictions. The Oregon district court implemented the injunction against additional lawsuits, such as this one, to protect the same investors Bustos

No. 12-50765

claims to represent.[6] Furthermore, the interstate judicial system's interest in the most efficient resolution of controversies strongly cuts against allowing Bustos to continue his forum-shopping.

## C.

Bustos claims the MJ erred in denying his motion for leave to amend the complaint. His proposed complaint attempted to fix the jurisdictional defect by relying on defendants' response to Alpha Telcom's submissions to the Oregon district court regarding Lennon's fees. The proposed complaint further stated that Bustos had not previously been aware of Lennon's health issues and alleged that the attorneys acted to conceal this fact.

The MJ determined that the pleading did not support personal jurisdiction. In addition, the MJ rejected, as disingenuous, Bustos's assertion that he had previously been unaware of Lennon's medical condition. As the MJ pointed out, not only were Lennon's health issues revealed to the Oregon court two years before the instant lawsuit was filed, but Bustos waited six months to file this motion from the date he alleges he first heard of Lennon's stroke.

We review the denial for abuse of discretion. *Crostley v. Lamar Cnty., Tex.*, 717 F.3d 410, 420 (5th Cir. 2013). The discretion given to the district court for this determination is broad. *Id.* "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Priester v. JP Morgan Chase Bank*, 708 F.3d 667, 672 (5th Cir. 2013) (quoting *In re Volks-*

---

[6] *See Rubera*, Nos. 12-35108, 12-35415, 2013 WL 3929231, at * 2 (citing *Barton v. Barbour*, 104 U.S. 126, 128–29 (1881)) (affirming the injunction "to prevent a subset of a receivership's creditors from suing the receiver to procure a judgment that comes from the receivership's coffers, thereby advantaging the litigious creditors over their more quiescent fellows when it comes time to distribute the receivership's assets").

No. 12-50765

*wagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir.2008) (en banc)).

Federal Rule of Civil Procedure 15(a)(2) demands that leave to amend should be freely given "when justice so requires." A district court, however, also has the power of managing its cases and docket and may consider factors, such as undue delay, bad faith, dilatory motive, and futility of the amendment, when deciding whether to grant leave to amend. *Priester*, 708 F.3d at 678. Considering the futility of the proposed amendment and the delay in submitting it, there is no abuse of discretion.

AFFIRMED.